UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DISCOPOLUS LLC, dba the WILD ORCHID, FANTASY GIRLS, LLC, and DIAMOND DOLLS OF NEVADA, LLC dba the SPICE HOUSE, DANCER JT, and SPARKLE LEILANI TAYLOR on behalf of herself and all similarly situated erotic dancers,<br><br>Plaintiffs,<br>v.<br><br>CITY OF RENO and MICHAEL CHAUMP, in his official capacity as Business Relations Manager of Community Development and Business Licenses for the CITY OF RENO and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00574-MMD-VPC<br><br>ORDER<br><br>(Pls.' Motion for Temporary Injunction – ECF No. 11; Pls.' Motion for Preliminary Injunction – ECF No. 12; Defs.' Motion to Dismiss – ECF No. 19) |

**I.  SUMMARY**

Plaintiffs Discopolus LLC and Diamond Dolls of Nevada (collectively, the "Strip Clubs"), as well as Dancer JT ("JT") and Sparkle Leilani Taylor (collectively, the "Dancers"), initiate this action to challenge the City of Reno's licensing requirements affecting strippers. Plaintiffs have filed a motion for a temporary restraining order (ECF No. 11) and motion for preliminary injunction (ECF No. 12) (collectively, "PI Motion"). In response, Defendants City of Reno and Michael Chaump (collectively, the "City") have filed a motion to dismiss. (ECF No. 19.) The Court has reviewed the City's response to Plaintiffs' PI Motion (ECF No. 16) and Plaintiffs' reply (ECF No. 20). The Court also has reviewed Plaintiffs' response to the City's motion to dismiss (ECF No. 22) and the City's

reply (ECF No. 24). For the reasons described below, the Court grants in part and denies in part the City's motion to dismiss. The Court also denies Plaintiffs' PI Motion.

**II.    BACKGROUND**

The Dancers and Strip Clubs allege that the City has violated their federal constitutional rights by requiring strippers (including the Dancers) to obtain licenses to strip and by selectively enforcing this requirement against women but not men.[1]

Strippers in the City are required to obtain licenses that authorize them to strip ("Work Cards") because they qualify as "adult interactive cabaret performers" under the City's municipal code ("Reno Municipal Code" or "RMC"), according to Plaintiffs. "Adult interactive cabaret performer" is a term of art that appears to encompass all strippers:

> Adult interactive cabaret performer means any person male or female who is an employee or independent contractor of an adult interactive cabaret and who, with or without any compensation or other form of consideration, performs as a sexually-oriented dancer, exotic dancer, stripper or similar dancer, actor, model, entertainer or worker whose performance on a regular and substantial basis emphasizes exposure of and focus on the adult interactive cabaret performer's specified anatomical areas and whose performance is designed specifically to arouse sexual passions. Adult interactive cabaret performer includes a person who, while performing or conducting personal or individual grooming, maintenance or hospitality services such as barber, cosmetic, food or beverage service or personal property maintenance (such as car wash or laundry), nevertheless emphasizes exposure of and focus on the person's specified anatomical areas. Adult interactive cabaret performer includes a patron of an adult interactive cabaret where the patron is performing for other patrons as part of any publicized or promoted event that encourages adult interactive cabaret performance by such patrons such as an "amateur night" or a "tryout night".

RMC § 5.06.011(a); *see also* RMC § 8.21.010(a) (substantially similar definition).[2]

The definition of "adult interactive cabaret performer" incorporates two additional terms of art: "adult interactive cabaret" and "specified anatomical areas." An adult interactive cabaret is essentially a strip club:

///

---

[1] These facts are taken from the First Amended Complaint ("FAC") (ECF No. 9) unless otherwise indicated.

[2] Both RMC chapters 5.06 and 8.21 govern the licensing requirements for strippers and strip clubs and contain several similar provisions.

2

> Adult interactive cabaret means any fixed place of business which offers to patrons on a regular basis or as a substantial part of the premises activity, the opportunity to view adult interactive cabaret performers whose attire, costume, clothing or lack thereof exposes specified anatomical areas whose performance emphasizes exposure of and focus on specified anatomical areas and whose performance or exposure of specified anatomical areas while providing services is designed specifically to arouse sexual passions, all of which is typically associated with allowing the performer to solicit from patrons present anything of value such as drinks, lap dances, table dances, tips or other gratuities, bookings dates or other compensation, whether monetary or otherwise.

RMC § 5.06.011(b); *see also* RMC § 8.21.010(b) (substantially similar definition). "Specified anatomical areas" are defined as "human genitals or pubic region; buttock or anus; or female breast below a point immediately above the top of the areola." RMC § 5.06.011(e); *see also* RMC § 8.21.010(f) (identical definition).

Plaintiffs allege that all strippers in the City, male and female, qualify as "adult interactive cabaret performers" because they all "wear outfits that expose their buttocks but not their anus, dance topless on stage and in the audience, dance on or near the patrons, and solicit tips, drinks and/or other gratuities from the patrons for their performances." (ECF No. 9 at 9.) As such, Plaintiffs argue, they should all be required to obtain Work Cards under RMC § 8.21.050(a), which states that "[e]ach adult interactive cabaret performer performing in an adult interactive cabaret business shall obtain, prior to the commencement of work[,] a work card and have his/her fingerprints and photograph taken through the chief of police."

Yet the City only requires female strippers to obtain Work Cards, Plaintiffs allege. "[T]here is not a single dancer work card issued to any one of the hundreds of male dancers who regularly perform in [the City], but over a thousand female dancers have complied with the [City's] requirement that they obtain such work cards," according to Plaintiffs. (ECF No. 9 at 9.)

The process for obtaining Work Cards is described in detail in an affidavit submitted by the City. (ECF No. 16-1.) The first step for strippers seeking a Work Card is to produce a City business license and valid government-issued identification to the Reno Police Department ("RPD"). (*Id.* at 2.) RPD hands the applicant a work card

application, civil applicant waiver, and child support information, then searches for outstanding criminal warrants while the applicant completes the forms. (*Id.* at 3.) If the applicant is not arrested on the spot for outstanding warrants, then the applicant pays RPD $100.25 "to process the application[] and perform a statewide and nationwide criminal background check." (*Id.*) RPD then photographs the applicant, takes fingerprints, and issues a Work Card to the applicant. (*Id.* 3-4.) The Work Card remains valid for five years. (*Id.*) The affidavit does not specify whether the renewal process is the same as the initial licensing process.

The FAC asserts claims for violation of the equal protection clause of the Fourteenth Amendment and the free speech clause of the First Amendment as well as claims that the licensing requirements are unconstitutionally vague and overbroad.

### III. MOTION TO DISMISS (ECF No. 19)

#### A. Fed. R. Civ. P. 12(b)(1) Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) "is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *In re Ford Motor Co./Citibank (S.D.), N.A., Cardholder Rebate Program Litig.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

#### B. Fed. R. Civ. P. 12(b)(6) Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations—but not legal conclusions—in the complaint. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

### C. Discussion

The City seeks dismissal for failure to state a claim and for lack of standing. The Court first determines whether Plaintiffs have adequately stated claims for relief before considering whether those Plaintiffs who have stated claims for relief have standing.

#### 1. Failure to state a claim

Plaintiffs Taylor and JT have adequately stated claims against the City for violation of the equal protection clause of the Fourteenth Amendment[3] but not for

///

---

[3]The Court dismisses all claims deriving from the Nevada Constitution to the extent that Plaintiffs intended to make them. If Plaintiffs intend to raise Nevada Constitutional claims, those claims need to be contained in separate counts. Plaintiffs *(fn. cont…)*

5

overbreadth, vagueness, or prior restraint. The Strip Clubs have failed to state any claims.

### a. Equal Protection

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003) ("To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional.").

Plaintiffs Taylor and JT allege that they are members of a protected class, namely, women.[4] (ECF No. 9 at 13.) The City has allegedly discriminated against them by selectively enforcing RMC § 8.21.050 against female but not male strippers. (*Id.* at 9.) Even though male strippers are required to obtain Work Cards under RMC § 8.21.050 because they "wear outfits that expose their buttocks," Plaintiffs allege that male strippers do not apply for Work Cards and that the City does not sanction male strippers for their failure to obtain Work Cards. (*Id.*) While Plaintiffs Taylor and JT do not describe exactly how the City selectively enforces RMC § 8.21.050 against them personally,[5] they
///

---

*(…fn. cont.)*
have made no effort to advance such claims aside from citing the Nevada Constitution in their Complaint. In addition, Plaintiffs have framed their constitutional claims only in terms of the Federal Constitution. (*See, e.g.*, ECF No. 22 at 8 ("Plaintiffs' First Cause of Action challenges the selective enforcement of the Adult Interactive Cabaret regulations . . . . as the gender discrimination prohibited by the equal protection clause of the [Fourteenth] Amendment . . . . Plaintiffs' Second Cause of Action states that the licensing provisions . . . violate the First Amendment . . . .").)

[4]The Court also construes this allegation to support membership in a narrower class consisting of women who are strippers, to the extent that this becomes relevant later in the litigation.

[5]Neither Plaintiff Taylor nor Dancer JT has alleged being sanctioned under the licensing scheme, for instance. There are no allegations that Taylor has been requested *(fn. cont…)*

1  have alleged sufficient facts to make selective enforcement plausible. First, Plaintiffs allege that over one thousand female strippers in the City have obtained Work Cards while none of the hundreds of male strippers in the City have. (*Id.*) Second, Plaintiffs allege that female strippers who admit to having danced without a Work Card during the application process are fined about $200. (*Id.*) By contrast, the City does not subject male strippers to these fines because male strippers never seek Work Cards in the first place. (*See id.*) It is reasonable to infer from these facts that male strippers do not fear enforcement to the same degree as female strippers, presumably because they know that RMC § 8.21.050 will not be enforced against male strippers. It is also reasonable to infer from these facts that the City intends to discriminate on the basis of sex. Accepting Plaintiffs' allegations as true, it cannot be coincidental that thousands of female strippers and no male strippers have Work Cards. Accordingly, Plaintiffs Taylor and JT have adequately stated a claim for violation of the equal protection clause of the Fourteenth Amendment.

The Strip Clubs allege that they are members of a different identifiable class: businesses that hire female strippers. (*Id.* at 13.) The Strip Clubs allege that the City has discriminated against them on this basis by selectively enforcing RMC chapters 5.06 and 8.21 (the "Ordinances") against only those strippers who are female. (*Id.*) There is a mismatch between these factual allegations and the legal theory the Strip Clubs seek to advance. These facts do not make it plausible that the City has intentionally discriminated against businesses that hire female strippers. The intended targets of the City's selective enforcement appear to be female strippers, not the businesses that employ them, and Plaintiffs have not alleged any facts to the contrary. At most, the Strip Clubs have suggested that the City's selective enforcement has a disparate impact on strip clubs that hire female strippers. However, disparate impact alone cannot ground an

///

---

*(…fn. cont.)*
to produce copies of her Work Card, and there are no allegations that Dancer JT has been instructed to obtain a Work Card by City officials.

equal protection claim. *See Washington v. Davis*, 426 U.S. 229, 239-41 (1976) (holding that, absent discriminatory intent, the equal protection clause does not prohibit disparate impact). Accordingly, the Strip Clubs have failed to state a claim for violation of the equal protection clause of the Fourteenth Amendment.

### b. Overbreadth & Vagueness

All Plaintiffs advance a claim for overbreadth and vagueness in violation of the due process clause of the Fourteenth Amendment.[6] The City contends that this claim is conclusory. (ECF No. 19 at 11.) Plaintiffs respond that they have recited the tests for overbreadth and vagueness and identify aspects of the Ordinances that are allegedly vague. (ECF No. 22 at 10-11.)

An overbreadth challenge is unavailable here because Plaintiffs have not alleged that their speech is categorically unprotected by the First Amendment. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985) (holding that only individuals engaged in unprotected speech may bring overbreadth challenges).

A vagueness challenge, on the other hand, is available, though Plaintiffs have failed to raise their right to relief on this claim above a speculative level. Plaintiffs allege that several aspects of the definition of "adult interactive cabaret performer" are vague and subjective. First, Plaintiffs argue that the definition of "adult interactive cabaret performer" is vague because it is circular; it incorporates the definition of "adult interactive cabaret," which in turn incorporates the definition of "adult interactive cabaret performer." (ECF No. 9 at 19 (citing RMC §§ 5.06.011(a)-(b)).) Second, Plaintiffs argue that the definition contains the following subjective language: "regular basis," "substantial part of the premises activity," "emphasize exposure of and focus on specified anatomical areas," and "specifically designed to arouse sexual passion." (ECF No. 22 at 10-11 (citing ECF No. 9 at 10-11).) The parties fail to note, however, that the Ninth Circuit
///

---

[6]The Court so construes the FAC because Plaintiffs' overbreadth and vagueness claim bears no indication that it is limited to particular plaintiffs, unlike Plaintiffs' First Amendment claim, which was made only on behalf of Plaintiffs Taylor and Dancer JT.

explicitly found that a nearly identical ordinance was not void for vagueness in *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir.), *amended on denial of reh'g*, 402 F.3d 875 (9th Cir. 2005). In *Gammoh*, the court examined substantially the same language disputed here ("regular basis," "substantial part of the premises activity," "emphasize exposure of and focus on specified anatomical areas," and "specifically designed to arouse sexual passion") and concluded that the ordinance was not void for vagueness:

> [The ordinance] applies only to "adult cabaret dancers" who meet the following five qualifications: 1) the individual must perform at an "adult cabaret"; 2) the performer must perform as a sexually-oriented dancer, exotic dancer, stripper, or similar dancer; 3) the performance must focus on or emphasize the performer's breasts, genitals, and/or buttocks; 4) the performance must have this focus or emphasis on a regular basis; and 5) the performance must have this focus or emphasis on a substantial basis. Thus, an "adult cabaret dancer" is defined by a combination of features, not by any one subjective term. The combined terms outline the performer, the place of the performance, and the type of performance. Each of the five limitations provides context in which the other limitations may be clearly understood. The definition as a whole gives notice to performers and ample guidance to law enforcement officers as to who is and who is not an "adult cabaret dancer."

*Id.*

Plaintiffs make only one allegation in their FAC about the definition of "adult interactive cabaret performer" that was not considered by the Ninth Circuit in *Gammoh*—the circularity of the definitions in RMC §§ 5.06.011(a) and 5.06.011(b). Subsection (a) defines an adult interactive cabaret performer as an employee or independent contractor of an adult interactive cabaret (in part), while subsection (b) defines an adult interactive cabaret as a business that provides the opportunity to view adult interactive cabaret performers (in part).

Nevertheless, Plaintiffs have failed to allege facts sufficient to raise this right to relief above a speculative level. They have not explained how the statute fails to put Plaintiffs on notice of prohibited conduct. The FAC is devoid of allegations that anyone actually has been confused by whether the Ordinance applies to them, and in fact contains allegations that suggest the opposite. Over a thousand female strippers have

understood that they are required to obtain Work Cards. (ECF No. 9 at 9.) Nor have Plaintiffs explained how the ordinance fails to guide the City regarding whom they can require to obtain Work Cards. In addition, Plaintiffs omit discussion of RMC § 8.21.010(b), which essentially repeats the definitions contained in RMC § 5.06.011(b) with one important difference—this definition lacks the circularity of which Plaintiffs complain.[7] It is fairly easy to see by reference to both sections exactly whom the Ordinances target despite the circularity contained in RMC §§ 5.06.011(a)-(b).

Plaintiffs have failed to state a claim for overbreadth or vagueness.

### c. Prior Restraint

Only Plaintiffs Taylor and JT claim that the Ordinances constitute a prior restraint in violation of the free speech clause of the First Amendment.[8] (*See* ECF No. 9 at 15-18; ECF No. 19 at 11.) The City essentially argues that this cause of action is inadequately pleaded because it is too conclusory. (ECF No. 19 at 10.) Plaintiffs respond that they have advanced two theories to support the claim that the Ordinances violate the First Amendment: the Ordinances chill protected speech and violate the "void for vagueness" doctrine applicable to prior restraints. (ECF No. 22 at 8-9.) The second theory essentially encompasses the first. Prior restraints are presumptively unconstitutional because they chill protected speech. *See Clark v. City of Lakewood*, 259 F.3d 996, 1005 (9th Cir. 2001), *as amended* (Aug. 15, 2001).

The Ninth Circuit Court of Appeals discussed at length the constitutionality of licensing schemes that regulate nude dancing in *Clark v. City of Lakewood*:

> A licensing scheme regulating nude dancing is considered a prior restraint because the enjoyment of protected expression is contingent upon the

---

[7]*Compare* RMC § 5.06.011(b) ("Adult interactive cabaret means any fixed place of business which offers to patrons on a regular basis or as a substantial part of the premises activity, the opportunity to view *adult interactive cabaret performers* . . . .") (emphasis added) *with* RMC § 8.21.010(b) ("Adult interactive cabaret means any fixed place of business which offers to patrons on a regular basis or as a substantial part of the premises activity, the opportunity to view *performers* . . . .") (emphasis added).

[8]The Court dismisses any free speech claims made by the Strip Clubs, to the extent that such claims are made in the Complaint. Plaintiffs have made no effort to demonstrate that the Strip Clubs may advance this claim.

10

approval of government officials. While prior restraints are not unconstitutional per se, any system of prior restraint comes to the courts bearing a heavy presumption against its constitutional validity. Like other regulations upon nude dancing, prior restraints can be imposed only if they are reasonable time, place and manner restrictions. In addition, an adult entertainment licensing scheme must contain at least two procedural safeguards. First, a decision to issue or deny a license must be made within a brief, specified and reasonably prompt period of time. Second, there must be prompt judicial review in the event a license is denied.

259 F.3d 996, 1005 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (internal citations omitted).

Plaintiffs essentially argue that the licensing scheme is not a reasonable time, place, and manner restriction because the allegedly ambiguous definition of "adult interactive cabaret performer" allows City officials "to pick and choose who is required to obtain [a Work Card]." (ECF No. 22 at 10.) As explained above, the definition of "adult interactive cabaret performer" is not vague or ambiguous. Plaintiffs additionally argue that the licensing authority's ability to deny a permit to applicants who provide "misleading" information is vague because the word misleading is undefined in the Ordinances. (ECF No. 9 at 16.) This is a legal conclusion that the Court need not accept as true. Moreover, Plaintiffs have not alleged that the Ordinances lack the necessary procedural safeguards to ensure constitutionality, as described in *Clark*, 259 F.3d at 1005. Accordingly, Plaintiffs have failed to state a claim for violation of the First Amendment.

In sum, Plaintiffs Taylor and JT have adequately stated a claim for violation of the equal protection clause of the Fourteenth Amendment, but not for overbreadth, vagueness, or prior restraint. The Strip Clubs have not adequately stated any claims for relief. The Court next evaluates whether Plaintiffs Taylor and JT have standing.

### 2. Standing

The City argues that Plaintiffs lack standing to challenge the Ordinances. (ECF No. 19 at 14.) Specifically, the City contends that Taylor cannot demonstrate injury because she already has a license and that the Court cannot determine whether JT has standing without verifying her identity. (*Id.* at 15.)

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs must demonstrate standing separately for each claim they press, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), each form of relief they seek, *Friends of the Earth, Inc.*, 528 U.S. at 185, and each provision they challenge, *see 4805 Convoy, Inc. v. San Diego*, 183 F.3d 1108, 1112-13 (9th Cir. 1999). Plaintiffs bear this burden. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (internal citations omitted)). Nevertheless, only one plaintiff need have standing to satisfy Article III's case-and-controversy requirement. *Massachusetts*, 549 U.S. at 518.

Regarding JT, Plaintiffs have failed to carry their burden—they have not advanced any affirmative arguments whatsoever that JT has standing. (*See* ECF No. 22 at 5.)

Plaintiffs' sole remaining claim is for violation of the equal protection clause of the Fourteenth Amendment. Plaintiffs argue that Taylor suffered a legally cognizable injury when she "was forced to pay an unconstitutional license fee." (ECF No. 22 at 5.) The Court agrees that Plaintiffs have demonstrated injury to Plaintiff Taylor. *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."); *see also Whittington v. Maes*, 655 F. App'x 691, 697 (10th Cir. 2016) ("Paying a required fee establishes injury in fact."). Plaintiffs have also satisfied the other requirements of standing, at least with respect to one form of relief—restitution. The injury is fairly traceable to RMC § 8.21.050. Plaintiff Taylor would

not have paid the fee but for the ordinance's requirement that she obtain a Work Card. The injury is also redressable; the Court can remedy the injury by ordering restitution. Accordingly, Plaintiff Taylor has standing to seek restitution for violation of the equal protection clause of the Fourteenth Amendment related to the City's enforcement of RMC § 8.21.050.[9]

Plaintiff Taylor also seeks prospective relief based on her equal protection claim. In order to seek prospective relief, Plaintiffs bear the burden of demonstrating that "threatened injury [is] certainly impending." *Clapper*, 568 U.S. at 409. The impending injury Taylor faces will allegedly accrue when she is forced to renew her Work Card at some point in the next five years. (ECF No. 22 at 5; *see also* ECF No. 16-1 at 4.) However, Plaintiffs have failed to describe the renewal process or identify the authority that governs the renewal process. The Court is left to guess whether Plaintiffs challenge an ordinance, policy, or practice, not to mention what the renewal process—however prescribed—entails. In the absence of allegations describing the renewal process (or an allegation that Plaintiff Taylor would have to go through the initial licensing process all over again), it is reasonable to infer that the renewal process could be different from the initial licensing process. The renewal process may be less arduous or present different constitutional questions than the initial licensing process. Plaintiffs' failure to identify what exactly they are challenging precludes the Court from evaluating causation or redressability. Accordingly, the Court cannot find that Plaintiff Taylor has standing to seek prospective relief.

Given that Plaintiffs have not demonstrated standing to pursue prospective relief on their sole remaining claim, Plaintiffs' PI Motion will be denied.

///

///

///

---

[9]The Court construes the Complaint to seek restitution for lost revenue only as to the Strip Clubs since the allegations in the complaint that support restitution for lost revenue relate only to the Strip Clubs.

## IV. AMENDMENT

Plaintiffs adequately pleaded an equal protection claim for which Plaintiff Taylor has standing to seek restitution. Plaintiffs failed to state a claim for overbreadth, vagueness, or prior restraint. The Court grants leave to amend because it is not inconceivable that Plaintiffs could amend their FAC to cure the deficiencies that have resulted in dismissal of most of their claims. *See Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116, 118 (9th Cir. 2012) ("Courts 'should freely give leave' to amend 'when justice so requires.'" (quoting Fed. R. Civ. P. 15(a)(2)); *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion to dismiss is granted in part and denied in part. It is denied as to Plaintiff Taylor's equal protection claim. It is granted as to the remaining claims. Plaintiffs are given leave to amend their complaint to cure the deficiencies identified herein. Plaintiffs must file an amended complaint within fifteen (15) days. Failure to file a timely amended complaint with result in dismissal of the claims in the FAC with prejudice and the action will proceed only on Plaintiff Taylor's equal protection claim.

It is therefore ordered that Plaintiffs' motion for a temporary restraining order (ECF No. 11) and motion for a preliminary injunction (ECF No. 12) are denied as moot.

DATED THIS 13th day of December 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

14